## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SCOTT LAIRD, | ) CIVIL ACTION NO. |
| Plaintiff, | ) |
| v. | ) |
|  | ) **JURY TRIAL DEMANDED** |
| FEDEX SUPPLY CHAIN. | ) |
| Defendant. | ) *ELECTRONICALLY FILED* |

## COMPLAINT

Plaintiff, Scott Laird, a resident of Cumberland County, Pennsylvania, by and through his attorneys, brings this civil action for damages against the above-named Defendant, FedEx Supply Chain, demands a trial by jury, and complains and alleges as follows:

## THE PARTIES

1.    Plaintiff, Scott Laird (hereinafter referred to as "Mr. Laird" or "Plaintiff") is an adult individual who currently resides at 2228 Canterbury Dr., Mechanicsburg, Cumberland County, Pennsylvania 17055.

2.    Defendant, FedEx Supply Chain, (hereinafter referred to as "FedEx" or "Defendant") has its corporate headquarters located at 700 Cranberry Woods Drive, Cranberry Township, Butler County, Pennsylvania 16066.

3.     At all times relevant and material hereto, Defendant employed more than one-hundred (100) people, and operated a facility at 4900 Ritter Rd., #120, Mechanicsburg, Cumberland County, Pennsylvania 17055.

## JURISDICTION AND VENUE

4.     This Complaint alleges violations of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §4301-4335 (hereinafter referred to as "USERRA")

5.     This Honorable Court has jurisdiction of this matter, case, and controversy pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).

6.     Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this Judicial District.

## STATEMENT OF FACTS

7.     Mr. Laird has worked for FedEx Supply since early 2015.

8.     Mr. Laird was originally hired to be a Senior Account Manager, then was moved into a Solutions Architect role.

9.     Beginning on or about October of 2017, Mr. Laird began to face discrimination and harassment based on his status as an active member of the Army National Guard.

10.     The discrimination and harassment flowed primarily from Mr. Laird's supervisor, Raj Sharma (hereinafter "Ms. Sharma").

11.     Ms. Sharma made negative statements to Mr. Laird about his leave for training with the National Guard.  For instance, Ms. Sharma commented that Mr. Laird was being an inconvenience to the team, that Mr. Laird should have done more to prepare his team prior to leaving for training, that Mr. Laird "needs to do better, or this will turn out bad," and overtly suggesting that Mr. Laird was "manipulating" the system for leave in order to drill with the National Guard.

12.     Ms. Sharma's comments regarding the trouble Mr. Laird's team had while he was away and that his team was not prepared for his leave properly were unfounded and were debunked each time Mr. Laird would talk with his team members upon returning from military leave.

13.     On multiple occasions, Ms. Sharma made Mr. Laird purchase air cards so that he would be available to do work for FedEx Supply via phone and internet while on National Guard leave.

14.     Ms. Sharma forced Mr. Laird to attend meetings via internet and or perform FedEx Supply work via phone on multiple occasions while he was away on National Guard leave.

15.     Mr. Laird made complaints to the Human Resources Department at FedEx Supply about Ms. Sharma's requirement that he attend work meetings

remotely while in full uniform; however, Mr. Laird's complaints did not result in any change of Ms. Sharma's behavior.

16.    Ms. Sharma made it difficult for Mr. Laird to use his personal vacation time around any National Guard leave out of retaliation for Mr. Laird taking part in both required and optional National Guard training.

17.    Ms. Sharma made statements to Mr. Laird about how she and the Human Resources Manager at the time were both convinced that Mr. Laird was trying to manipulate the system and take advantage of them and FedEx Supply.

18.    Upon information and belief, the statements about Mr. Laird trying to manipulate the system were directly in retaliation for his taking part in National Guard training.

19.    Upon information and belief, the statements made towards Mr. Laird regarding his personal vacation requests and about him trying to manipulate the system were not made to other employees of FedEx Supply who made similar requests for vacation but who were not members of the military.

20.    Specifically, on or about November 13, 2017, Mr. Laird made a request to attend voluntary training with the National Guard to begin on November 20, 2017.  This request was denied by Ms. Sharma.

21.    On November 14, 2017, Mr. Laird made another request for the November 20, 2017 leave, which was denied by Aileen Coburn in Human Resources.

22.    Mr. Laird again properly requested the November 20th leave on November 15, 2017, which again was denied by Ms. Sharma.

23.    It was not until Mr. Laird appealed the decision(s) of Ms. Sharma and Human Resources to upper management, that the matter was finally resolved, and his leave was approved.

24.    The difficulty, discrimination, harassment, and retaliatory behavior Mr. Laird faced from Ms. Sharma and other members of management, simply for being an active member of the Army National Guard, was ongoing and severe.

25.    The discrimination, harassment, and retaliation Mr. Laird faced from Ms. Sharma and from other management at FedEx Supply was reported many times to Human Resources and upper management.

26.    FedEx Supply provides "differential pay" to members of the military when they are on military leave for deployment or training.

27.    The differential pay is meant to bridge the gap between the pay the employee receives from the military while deployed or training, and the pay which they would otherwise enjoy while working at FedEx Supply.

28.     Mr. Laird was provided differential pay when he was deployed and when he was at training, however, Mr. Laird was not provided full pay for those multiple instances on which he was required to be actively working for FedEx Supply by attending meetings or conferences remotely or during which he was required to be "on call" for FedEx Supply while at National Guard training.

29.     Mr. Laird was not reimbursed for the air cards he was required to purchase in order to be on-call or available for meetings and phone calls while on leave for National Guard training.

30.     Mr. Laird was forced to expend many hours of his personal time in following up with vacation and leave requests which were the responsibility of FedEx Supply to properly handle.

31.     Mr. Laird was placed in an uncomfortable position at FedEx Supply each time he requested National Guard leave or deployment, and each time he returned from leave or deployment as a result of embarrassing and humiliating statements stemming from Ms. Sharma.

## COUNT I

### USERRA VIOLATIONS

32.     All prior paragraphs are incorporated herein as if set forth fully below.

33.     As a member of the Army National Guard, Mr. Laird was and remains protected by USERRA.

34.    USERRA prohibits any adverse action being taken against any active member of the military if the membership in the military is a motivating factor in the adverse action.

35.    USERRA prohibit expressions of hostility from decision makers towards protected military members.

36.    USERRA prohibits disparate treatment of protected military employees when compared to similarly-situated non-military employees.

37.    At all times relevant herein, FedEx Supply acted by and through its agents, servants, and employees, to make Mr. Laird jump through hoops and undertake unnecessary steps and inconveniences when he requested leave for the Army National Guard.

38.    At all times relevant herein, FedEx Supply acted by and through its agents, servants, and employees, to retaliate against Mr. Laird when he was requested leave for the Army National Guard.

39.    At all times relevant herein, FedEx Supply acted by and through its agents, servants and employees, in a discriminatory manner by failing to pay Mr. Laird appropriately when he was required to be on call while on leave for the Army National Guard and by failing to reimburse him for costs associated with his being on call.

40.    The actions of Defendant set forth above constitute violations of Mr. Laird's federal civil rights under USERRA.

41.    As a result of this retaliation, Mr. Laird has suffered economic loss, emotional distress, and a loss of self-respect and confidence, and his standing in the community has been damaged.

WHEREFORE, Plaintiff, Scott Laird, prays that this Honorable Court enters judgment in his favor and against Defendant, FedEx Supply, and that it enters an Order as follows:

a.    Defendant is to be permanently enjoined from harassing or retaliating against Mr. Laird on the basis of his Army National Guard status, or any basis prohibited under applicable federal law;

b.    Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of harassing or retaliating against employees based on their Army National Guard status, or any basis prohibited under applicable federal law, and are to be ordered to promulgate an effective policy against such harassment and retaliation and to adhere thereto;

c.    Defendant is to compensate Mr. Laird, reimburse Mr. Laird, and to make Mr. Laird whole for any and all pay and benefits

he would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension and seniority.   Mr. Laird should be accorded those benefits illegally withheld from the date he first suffered harassment and retaliation at the hands of Defendant until the date of verdict;

d.    Mr. Laird is to be awarded actual damages, as well as liquidated damages for any harm or injury caused to him by Defendant's actions;

e.    All damages available under the Uniformed Services Employment and Reemployment Rights Act, including but not limited to attorney's fees and liquidated damages;

f.    Mr. Laird is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

g.    Mr. Laird is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal law;

h.    Mr. Laird is to be granted such additional injunctive or other relief as he may request during the pendency of this action in an effort to ensure Defendant does not engage - or ceases engaging

- in illegal retaliation against Mr. Laird or other witnesses to this action; and

i.       The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

### **DEMAND FOR JURY**

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Mr. Laird respectfully demands a trial by jury.

Respectfully submitted,

Weisberg Cummings, P.C.

January 11, 2019
Date

/s/ Stephen P. Gunther
Stephen P. Gunther, Esquire
PA Bar I.D.#324203
sgunther@weisbergcummings.com

/s/ Steve T. Mahan
Steve T. Mahan, Esquire
PA Bar I.D. #: 313550
smahan@weisbergcummings.com

/s/ Derrek W. Cummings
Derrek W. Cummings, Esquire
PA Bar I.D. #: 83286
dcummings@weisbergcummings.com

/s/ Larry A. Weisberg
Larry A. Weisberg, Esquire
PA Bar I.D. #: 83410
lweisberg@weisbergcummings.com

2704 Commerce Drive, Suite B

Harrisburg, PA 17110
(717) 238-5707
(717) 233-8133 (FAX)

*Counsel for Plaintiff*